**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                :

STEPHEN DODGE, Individually and on  :
behalf of all others similarly situated,    :
                                :

        Plaintiffs,           :          Civil Action No. 03-cv-4896 (PGS)
                                :

             v.              :
                                :          **OPINION**

CAMBREX CORPORATION, et al.    :
                                :

        Defendants.         :
_____  :

**SHERIDAN, U.S.D.J.**

      This is a proposed securities class action whereby plaintiffs allege a scheme of fraud based

on: (1) the overstatement of Cambrex's financial results for the period of 1997 to 2001; and (2) the

failure to disclose and account for the loss of Cambrex's largest contract in 2003. By way of their

two-claim Consolidated Amended Class Action Complaint for Violations of Federal Securities Law,

plaintiffs seek: (1) class certification pursuant to Fed. R. Civ. P. 23; (2) compensatory damages in

favor of plaintiffs and all other class members for all damages sustained; (3) costs and expenses

incurred, including counsel fees and expert fees; and (4) any other just and proper relief for

defendants' alleged violations of § 10(b) of the Exchange Act, Rule 10(b)-5 and § 20(a) of the

Exchange Act.

There are currently two motions pending in this action. They are defendants' Motion to Certify an Order for Interlocutory Appeal, filed on December 12, 2005; and plaintiffs' Motion for Class Certification[1].

Defendant Cambrex Corporation ("Cambrex") is a "life sciences company dedicated to providing products and services that accelerate the discovery and commercialization of therapeutics."[2] Cambrex's bioscience segment manufactured the active ingredient for a drug called Replagel for a company called Transkaryotic Therapies Inc. (TKT)[3].

Plaintiffs allege two schemes of fraudulent activity: (1) overstatement of financial results for the period of 1997 to 2001; and (2) failure to disclose and account for the loss of Cambrex's largest contract with TKT.  The overstatement of financial results claim is based upon the allegation that the defendants engaged in a scheme to mislead investors about the company's financial condition with an overstatement of its financial results in the approximate amount of $5 million from 1997 to 2001. On January 23, 2003, the company announced that it had to correct the previous financial results for this period due to a failure to account for expenses paid by one division on the behalf of another, with the result of a declined in stock price from $25.73 to $23.89. This was allegedly due to the lack of a system to ensure accounting of expenses that lead to the improper inflation of net incomes.

---

[1]     There are two other motions on the docket. One seeks reconsideration of an order to compel, and the other is to strike a reply brief. The parties agree that they are both moot.

[2]     http://www.cambrex.com/content/about/companyoverview.asp

[3]     Replagel purportedly corrected cerebral blood flow abnormalities common in Fabry Disease and thus reduced incidents of strokes in Fabry patients.  (Fabry disease is a fat storage disorder caused by a deficiency of an enzyme involved in the biodegradation of lipids.)

According to an accountant who worked for Cambrex, this issue was known since 1997 and that he informed every Chief Financial Officer ("CFO") after 1997 but they choose not to correct it.

A short time before the correction on January 14, 2003, TKT announced that the FDA rejected its application to manufacture Replagel.  Sometime thereafter, TKT terminated its contract with Cambrex.  In spite of the loss of this contract, defendants issued a January 23, 2003 press release correcting an unrelated accounting error and simultaneously projecting a 10-15% earnings growth for Cambrex's Biosciences segment.

On April 3, 2003, Cambrex issued another press release adjusting the expected growth in the Biosciences segment from 10-15% to 0-5% expected growth.  Cambrex maintained this growth rate in an April 24, 2003 press release.  Finally on July 24, 2003, Cambrex issued another press release, this time acknowledging the loss of the TKT contract and revising the expected bioscience growth rate to 0-3%.  At a press conference the very next day, Defendant Luke Beshar, Chief Executive Officer, conceded that the loss of the TKT contract was known when the earlier financial forecasts were made, but also argued that it was taking longer than expected to replace the contract.  The stock price immediately dropped 20%.  Plaintiffs maintain that defendants knew about the lost TKT contract, but withheld the information and misstated projected growth in the Biosciences segment in order to inflate the stock price so as to allow the individual defendants to engage in insider trading of Cambrex securities and realize a profit of over $16 million.  *See,* Plaintiffs' Consolidated Amended Class Action Complaint, filed March 29, 2004.

The instant action was originally commenced in the name of *Dodge v. Cambrex* on October 17, 2003.  Additionally, five other similar actions were commenced.[4]  On January 12, 2004 the Court granted plaintiff's motion to consolidate all six actions under this docket number.  On March 29, 2004 the aforementioned Amended Complaint was filed by lead plaintiff's counsel.  Cambrex filed a motion to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) on September 10, 2004.  Judge Martini issued an opinion granting in part and denying in part Cambrex's motion to dismiss on October 27, 2005 (the "Martini Opinion").  On November 11, 2005, defendants Mack and Beshar moved for reconsideration of Judge Martini's October Order.  The motion was denied by Order filed January 30, 2006.

The instant motion, filed by Cambrex on December 12, 2005, seeks leave to file an interlocutory appeal with the Third Circuit Court of Appeals for the portion of defendants' motion denied by Judge Martini in 2005. Specifically, Cambrex seeks certification of the portions of Judge Martini's Order and Opinion denying dismissal of plaintiffs' claims based on "forward-looking statements" protected by the Safe Harbor provisions of the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78a-4 *et seq.* ("PSLRA").  In addition, defendants seek a stay of all discovery during the pendency of such appeal.

I.

As stated above, defendants seek leave to file an interlocutory appeal with the Third Circuit. In October 2005 The Honorable William J. Martini, U.S.D.J., granted in part and denied in part a

---

[4]The other actions include: (1) 03-5042 - *Hundley v. Cambrex Corp., et al*. filed October 23, 2003; (2) 03-5043 - *Nadoff v. Cambrex Corp, et al.* filed October 23, 2003; (3) 03-5076 - *Finnel v. Cambrex Corp., et al.* filed October 24, 2003; (4) 03-5647 - *Littman v. Cambrex Corp.*, *et al.* filed November 25, 2003; and (5) 03-5720 - *Deskin v. Cambrex Corp., et al.* filed December 1, 2003.

motion to dismiss submitted by defendants.  He further denied defendants' motion for reconsideration in January 2006.   Before an order is certified for interlocutory appeal, the district court must determine that the following conditions are met:

(1)     The order involves a controlling question of law,

(2)     as to which there is a substantial ground for a difference of opinion, and

(3)     the final resolution of the appeal must have the potential to materially advance the determination of the litigation.

*P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp.2d 355, 357-358 (D.N.J. 2001) (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 753 (3d Cir.1974); 28 U.S.C. § 1292(b)).  In this case, the second and third criteria are lacking.

A forward looking statement is shielded by the safe-harbor provision unless the plaintiff proves it was made with "actual knowledge . . . that the statement was false or misleading."  *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999) (citing 15 U.S.C. 78u-5(c)(1)(B)(ii).  According to defendants, the Third Circuit has not decided any case determining what constitutes an adequate pleading of "actual knowledge" under the PSLRA.  (Def's Br. at 13.) Cambrex argues, "there is substantial ground for difference of opinion as to the court's application of the "actual knowledge" standard. *Id.*  Despite defendants' contentions, both this Court and the Third Circuit has repeatedly addressed the adequacy of pleadings of "actual knowledge" under the PSLRA.  *See, In re Lucent Technologies, Inc. Securities Litigation*, 217 F. Supp.2d 529 (D.N.J. 2002); *GSC Partners CDO Fund v. Washington, et al.*, 368 F.3d 228 (3d Cir. 2004).[5]  Moreover, in the Martini Opinion,

---

[5]PLSRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant(s) acted with the required state of mind."  *In re Digital Island Securities Litigation*, 357 F.3d 322, 328 (3d Cir. 2004) (citing 15 U.S.C. § 78u-4(b)(2)).  For

it was  determined that defendants in fact had the requisite actual knowledge, thus not affording their forward-looking statements protection under the safe harbor.  *In re Cambrex Corp., Sec. Litig.*, 2005 WL 2840336, *8 (D.N.J. Oct. 27, 2005).

In the Martini Opinion, there were several facts lending to a strong inference of actual knowledge on the part of defendants that the earnings forecast could not be met.  First, TKT's Form 10-K issued on March 31, 2003 stated it had terminated its contract with Cambrex on January 2003 to be effective July 2003.  *In re Cambrex.,* 2005 WL 2840336 at *9.  Thus the Court found knowledge on the part of Cambrex that it had lost its TKT contract.  Second, a Cambrex executive stated during a conference call on January 24, 2003 that it typically takes between eight and nine months after deciding upon a new endeavor to finalize the ensuing contract.  Based on this, the Court found plausible plaintiff's contention that Cambrex knew it could not replace the TKT contract in time to realize the 10-15% projected growth.  *Id.* at *14.  Third, on an April 25, 2003 conference call, defendant Mack admitted it would take about 12 months to recover from the TKT contract termination. *Id.* at *14-15.  Finally, on a July 25, 2003 conference call, defendant Beshar conceded that defendants knew of the loss of the TKT contract during earlier forecasts.  *Id.* at *15.  These four instances led the Court to determine that defendants in fact had the requisite actual knowledge within the meaning of the PSLRA and further that their forward-looking statements did not warrant safe harbor protection.

Cambrex argues that the Martini Opinion merely spells out recklessness which is short of the required "actual knowledge" standard.  A reckless statement is one "involving not merely simple, or

---

purposes of the PLSRA, Plaintiffs may plead scienter by alleging facts that (1) establish a motive and an opportunity to commit fraud, or (2) constitute circumstantial evidence of either reckless or conscious behavior.  *In re Advanta Corp.*, 180 F.3d at 534-35.

even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers and sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *In re Advanta Corp.*, 180 F.3d at 535. "Conscious behavior" generally requires "intentional fraud or other deliberate illegal behavior." *In re Lucent Technologies, Inc. Securities Litigation*, 217 F.Supp 2d 529, fn 5 (D.N.J. 2002) (citing *In re Advanta Corp.*, 180 F.3d at 534). It is sufficient to establish actual knowledge by setting forth "circumstantial evidence of either reckless or conscious behavior." *In re Advanta Corp.*, 180 F.3d at 534. During oral argument, defendants further contend that a determination of "actual knowledge" would require the negation of all plausible inferences of explanation for the forward looking statements. The Court finds no statutory language or case law to support such a contention.

Looking at Judge Martini's analysis of the alleged "forward-looking statements," it is clear that the proper analysis was conducted and scienter was adequately pled, making those statements actionable. Several of the statements were too vague to fall under the safe harbor protection while others were made by or with the approval of executive officers who had actual knowledge. (*In re Cambrex.,* 2005 WL 2840336 at *9). The safe harbor is not available when the forward-looking statements are made by or with the approval of an executive officer of the entity who had actual knowledge that the statement was false or misleading, as is alleged to be the case here. *Id.* (citing 15 U.S.C. § 78u-5(c)(1)(B)(ii)). Judge Martini found a strong inference of actual knowledge, such that the executives making those "forward-looking statements" knew of the loss of the TKT contract and failed to disclose and account for it when they rendered their 2003 forecasts. (*In re Cambrex.,* 2005 WL 2840336 at *10).

Defendant argues that there are similarities between the matter at hand and the Central District of California's decision in *In re Lockheed Martin Corp. Sec. Litig.*, 272 F.Supp. 2d 944 (C.D. Cal. 2003).  In *In re Lockheed Martin*, the appellate court found that plaintiffs failed to plead with the particularity required under the PSLRA.  *Id.* at 956.  The Court determined that plaintiff's blanket statements like "[defendant] was well aware of the true states of affairs regarding the Company's . . . deliveries, the . . . contract negotiations . . . and third and fourth quarter 1998 financial results" were not enough detail to meet the particularity standards of the PSLRA.  *Id.*

These statements are distinguishable from those pled by plaintiffs in the instant matter.  As per the Martini Opinion, "plaintiffs list thirty-eight paragraphs under the heading 'Materially False and Misleading Statements Issued During the Class Period,' and list twenty-two more paragraphs under the heading 'The Truth About Cambrex's Improper Accounting Begins to Emerge.'" *In re Cambrex.,* 2005 WL at *4.  The majority of these paragraphs go into great detail about the date and type of statement made including the specific quotes when possible.  (Compl. at ¶¶ 35-63, 67-104.) Recognizing the higher pleading standards of the PSLRA and Fed. R. Civ. P. 9(b), Judge Martini specifically addressed which paragraphs met these standards and which did not.  *In re Cambrex.,* 2005 WL at *9-16.  The Martini Opinion diligently reviewed the Complaint to determine which of those statements should be considered blanket statements, cast-off as not pleading the requisite scienter and thus not actionable, and which met the actionable threshold under the PSLRA. *In re Cambrex.,* 2005 WL at *9-16.  As such, the Court finds that there is no substantial ground for a different opinion upon which to allow an interlocutory appeal.  28 U.S.C. §1292

Because of the thorough analysis in the Martini Opinion, it is difficult to see how certifying an interlocutory appeal on this issue will advance the determination of this litigation.  Certifying this

matter for appeal would neither obviate the need for trial as to the outstanding issues  nor ease the burden or cost of discovery. Significantly, Cambrex fails to provide any explanation of how certifying this matter for interlocutory appeal materially advances this litigation.  28 U.S.C. §1292.  The motion to permit an interlocutory appeal is denied.   Likewise, the motion to stay discovery is denied.

II.

Plaintiffs, Massachusetts Laborers Annuity Fund ("MLAF") and Greater Pennsylvania Carpenters Pension Fund ("GPCPF") each move pursuant to Fed.R.Civ.P. 23(a) & (b)(3) to obtain an order from this court granting: (1) certification of a plaintiff class of all purchasers of Cambrex Corp. securities between October 21, 1998 and July 25, 2003 (the "Proposed Class"); (2) appointment of MLAF and GPCPF as Proposed Class representatives; (3) appointment of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Proposed Class Counsel; and (4) appointment of Cohn Lifland Pearlman Herrmann & Knopf LLP as Proposed Class Liaison Counsel.  The motion was filed on April 28, 2006 and opposition was filed July 26, 2006.

For plaintiffs to proceed as a class they must demonstrate that they meet the prerequisites of Fed.R.Civ.P. 23(a) and that their cause of action falls within one of the three subdivisions listed in Fed.R.Civ.P. 23(b).  The standard for review of a motion pursuant to R. 23 is well established.  The Court may not consider the merits of the plaintiff's case.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).  The inquiry before the court is not whether the plaintiffs have stated a cause of action or will prevail on the merits, but whether the requirements of Rule 23 are met."  *Id. quoting Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir. 1971). The determination is squarely within the district court's discretion. The District Court abuses its discretion only if its decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an

9

improper application of law to fact." *In re Gen. Motors Corp., Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 783 (3d Cir. 1995); *Newton v. Merrill Lynch, Pierce, Fenner & Smith*, 259 F.3d 154, 165-166 (3d Cir. 2001). "The nature of the securities laws is complex and litigation therein concerned expensive. Without the class action device, many actionable wrongs would go uncorrected and persons affected thereby unrecompensed." Accordingly, the Third Circuit has held that "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action." *In re Data Access.*, 103 F.R.D. 130, 137 (DNJ 1984); *see also Kahan v. Rosentiel*, 424 F.2d 161, 169 (3d Cir. 1970).

In order to satisfy the requirements of R. 23(a), plaintiffs must prove (1) the class is so numerous that joinder of all the members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." These requirements are commonly referred to as "numerosity", "commonality", "typicality", and "adequacy of representation." In this case, defendants concede that the numerosity and commonality tests are met.

Typicality is established when the plaintiffs' claims arise from the "same event or course of conduct which in turn had given rise to the claims of other class members . . ." *In re Data Access.*, 103 F.R.D. at 139; *quoting Leist v. Tamco Enterprises, Inc.*, 8 Civ. 4439-CLB (S.D.N.Y. March 16 , 1982). "The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id*. See also, Newberg, *Class Actions*, ¶ 8816, p. 850 (1977) (The "typicality requirement can be met with surprising ease in most

10

cases, because the majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met.") Thus, even if they may be factual differences between the claims of the class representatives and other class members, does not rule out a finding of typicality. *In re Lucent Technologies, Inc., Sec. Litig.*, 307 F.Supp.2d 633, 644 (D.N.J. 2004).

The rub in this case is that there are two incidents that are in play -- the accounting overstatement of the financial results and the failure to disclose the loss of the TKT contract.  In applying the typicality standard to the proposed class representatives in light of the two separate incidents gives rise to some concern.  For example, MLAF did not suffer any loss due to the TKT incident. 2005 WL 384336, *3 (DNJ Oct. 27, 2005).   Judge Martini found the TKT cause of action arose out of allegedly fraudulent statements regarding Cambrex stock occurring after October 2002. MLAF's last purchase of Cambrex stock was in  July 2002.   MLAF could not have been injured by the disclosures because the fraud could not have occurred earlier than October 2002, consequently the TKT claims were dismissed as to MLAF. Defendants argue MLAF can not be typical because it does not have a claim based on the TKT incident as other claimants.  Defendants agree, however, MLAF is an appropriate lead plaintiff for the accounting misstatement claim.   Judge Martini specifically refuted defendants' current argument by stating that "a party named 'lead plaintiff under the PSLRA need not have standing to sue on each individual claim asserted in the complaint so long as other named plaintiffs have standing to pursue the claims at issue." *citing to In re Flag Telecom Holdings, Ltd., Sec. Litig.*, 308 F.Supp.2d 249, 257 (S.D.N.Y. 2004).

Although MLAF does not have standing to prosecute the TKT fraud claim, this does not bar MLAF from representing the class on the accounting misrepresentations during the class period,

11

October 21, 1998 to July 25, 2003. These claims still stand and present common questions of law and fact. *In re Global Crossing, Ltd., Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003).

Defendants contend GPCPF is atypical because it purchased Cambrex stock after some of the public disclosures regarding the cancellation of the TKT contract. That is to say, since the GPCPF stock purchases occurred on June 19, 20, 23, 30 and July 1, 2003, it is in a different factual position than many other claimants who had purchased shares commencing in mid-January, 2003. Defendants contend that the timing of GPCPF purchases raise reliance issues that are arguably unique to GPCPF. The circuits are split on whether timing issues can preclude a finding of typicality. *Compare*, *In re Feder v. Electronic Data Systems*, 429 F. 3d 125, 136-37 n.9 (5ᵗʰ Cir. 2005) *with*, *Rosen v. Textron, Inc.*, 369 F. Supp. 2d 204, 208-09 (D.R.I. 2005). However, "courts have ruled that purchases of stock by the class representative after negative announcements during the class period do[es] not destroy typicality. *Lehocky v. Tidel Techs, Inc.*, 220 F.R.D. 491, 501-02 (S.D.T. ex. 2004). *Dietrich v. Bauer*, 192 F.R.D. 119 (S.D.N.Y. 2000); *see also*, *In re Feder*, 429 F. 3d at 138. In addition, it has been held that proposed class representatives who purchased shares mid-stream, i.e. during the course of a series of disclosures may satisfy the typicality test[6]. *In re Salomon Analyst Metromedia,* 236 F.R.D. 208, 216 (S.D.N.Y. 2006). Based on the above, MLAF and GPCPF together meet the typicality requirement of Fed.R.Civ.P. 23(a).

Notwithstanding the proposed class representatives satisfaction of the above requirements, the Court has taken note of the parties suggestion, during oral argument, that subclasses may be

---

[6]    Defendants contend *Beck v. Maximus Inc.,* 457 F. 3d 291 (3d Cir. 2006) supports their contention that the presence of an even arguable defense peculiar to a named plaintiff is sufficient to preclude a finding of typicality. Suffice it to say, that is an overly narrow reading of *Beck*. To the contrary, the court did not find that the mere presence of a unique defense alone was sufficient to defeat a finding of typicality it found that it may destroy typicality. *Id.* at 298.

appropriate for this action. The Court finds plaintiffs and defendants should confer and jointly, if possible, propose by motion such subclasses within thirty days.

III.

To determine adequacy of representation there is a two-step inquiry and showing: (1) the plaintiffs' attorney must be qualified; and (2) the plaintiff must not have interests antagonistic to those of the class. *Lenahan v. Sears, Roebuck and Co.,* 2006 WL 2085282 (Jul. 24, 2006); *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239, 247 (3d Cir. 1975). Rule 23(a)(4) mandates that "the representative parties will fairly and adequately protect the interest of the class." Defendants do not contest the qualifications of the proposed class counsel. Defendants argue that both MLAF and GPCPF are not adequate representatives for the class due to an apparent lack of knowledge regarding the case and their alleged excessive reliance upon counsel to manage the litigation.[7] The Court disagrees. At depositions, plaintiff's representatives demonstrated adequate knowledge. For example, Mr. McCabe of MLAF testified that the basis for false guidance claims was that Cambrex lost a "very large contract, TKT, and it was going to affect the bottom line. Further that this was known by management with no action taken. Mr. McCabe also expressed a detailed understanding of the claims against Cambrex, stating that there were two problems, accounting misstatements from 1997 to 2003 and failure to correct public statements regarding the TKT claim. Each of the proposed lead plaintiffs from MLAF and GPCPF also demonstrated their knowledge of the fiduciary obligations of a class

---

[7]    In passing, Defendants appear to argue that GPCPF cannot represent the class as they still own shares in Cambrex. This ownership represents interest antagonistic to the class. This argument has been rejected by the Third Circuit in *In re Cendant Corp. Litig.* 264 F. 3d 201, 243 (3d Cir. 2001).  The court discussed how Congress rejected that argument by enacting the lead plaintiff provisions of the PSLRA, which anticipated that entities would continue to hold stock in a defendant corporation and serve as lead plaintiffs.

13

representative as McCabe stated, "In other words, to act in their best interest . . . We'd have to monitor the litigation, monitor the attorneys and just do whatever's . . . best for the class . . . We need to be willing to participate in whatever way we are needed, to monitor the cases and to help make decisions on how that case is going to be resolved in order to recover the most for the damaged parties." (Pl. Br. at 6). The Third Circuit has held that a review of the level of knowledge is not the inquiry before this Court on this motion. 671 F. 2d 779, 789 (3d Cir. 1982); *Epstein v. Moore*, No. 87-2984, 1988 WL 622213 at *4 (DNJ June 13, 1988) (knowledge is irrelevant to the adequacy inquiry).

IV.

In addition to the satisfaction of the requirements set forth in Rule 23(a), plaintiffs must demonstrate that the proceeding would fit within Rule 23(b)(3) which requires that the court find "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods, for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The Court finds that R. 23(b)(3) is satisfied. The common questions of law or fact predominate over individual issues. The common questions need not be identical. *Epstein*, 1988 WL 62213, *5 (D.N.J. June 13, 1988). Here the common questions of law are whether the defendants materially misrepresented the financial condition of Cambrex during the class period as well as the alleged failure of Cambrex to disclose the loss of its largest contract TKT. In addition, the class action is the best method of resolving the claims. It is superior to other methods for the fair and efficient adjudication of the controversy. It would be burdensome to require that individual actions be brought against Cambrex. *Eisenberg*, 766 F. 2d at 785. Complex securities fraud claims and the class action device is a particularly appropriate

14

means to resolve complex cases such as this one.  *In re Data Access.*, 103 F.R.D. 130, 137 (DNJ 1984);  *see also Kahan v. Rosentiel*, 424 F.2d 161, 169 (3d Cir. 1970).

The class period asserted by the plaintiffs is October 21, 1998 to July 25, 2003. As there was no objection to this time frame, this will be the class period.

The court grants class certification to the class defined as all purchasers of Cambrex Corporation securities between October 21, 1998 and July 25, 2003. Excluded from the class are defendants, the officers and directors of Cambrex during the Class Period, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which any of the defendants have or had a controlling interest.

Class Counsel shall be the law firms of Lerach Couglin Stoia Geller Rudman & Robbins, LLP and Cohn Lifland Pearlman Herrman & Knopf, LLP; and class counsel shall file their motion for court approval of the appropriate form and procedures for notice to the members of the plaintiff class, pursuant to Fed. R. Civ. P. 23( c) (2) within thirty (30) days hereof.

February 23, 2007                                     S/ *Peter G. Sheridan*
                                                      PETER G. SHERIDAN, U.S.D.J.